Madam Clerk, you can call up our first case. 19-001-4, Eeservices v. Cook County Collector Good morning, Your Honor. Please the Court. Both counselors are going to argue. Come on up and tell us who you are. On behalf of the Petitioner Appellant, Eeservices, Curt Floyd. Okay. This is the State's Attorney, Anthony O'Brien. Alright, so 15 minutes aside, save some of that time for rebuttal and speak directly into the microphone. It gives us both recording and amplification. Okay? Will do. Thank you. I'd like to start out addressing Respondent's main contention, which to use their terminology, one would have to check reason at the door to read the statute as it is written and that there has to be some materiality requirement read into the county error provision of the sale and error statute. We discussed at some length a Fourth District case in our reply brief that I believe applies. It rejected a similar argument there in that case. It was subsection A6 of the sale and error statute regarding a bankruptcy petition had been filed. And in that case, the county argued that because the bankruptcy petition had actually been dismissed at the time of the sale, that it couldn't apply because there was no time limit on how long that could last, could indefinitely delay the tax sale of the property, and that logically they argued if the automatic state provision of the bankruptcy code was not in effect, then that couldn't logically and reasonably give rise to that provision of a sale and error. And the Fourth District rejected that, saying that, number one, as we've argued here, clearly if the legislature had intended those kind of exceptions or those additional provisions to apply, they certainly could have said so in the statute. And to the larger point about whether this is something logical, whether this is something that makes good sense as a statute, they went on to say the legislature, based on the plain language of the statute, the intent was clearly that the circuit courts of Cook County don't have to concern themselves with the ins and outs of the bankruptcy code and bankruptcy procedures. And I'll make a short quote that I think is directly applicable to our case here. The court said, quote, the legislature has made it simple. If a bankruptcy petition has been filed, a sale while that action is pending is in error, end quote. So here we've got a different provision, A-5, right before this A-6, that says a county error is grounds for granting a petition for sale in error. Counsel, what about the fact that your error did not occur in anything required by the statute? Property location, that's not required by the statute, is it? The statute, we submit, well, this is a website maintained by the county assessor. Well, the county assessor does a lot of things, but is that required by the statute? I don't know that the statute requires them to do anything, but if they do something and there's an error in it, then I believe the statute, the sale in error statute applies. Well, what in the statute does, is that reflected? Well, the 310-A-6 simply says a county error. I think you're reading a little bit into it. I don't think so, in that it does not say that it has to be an error in something that the county is required to publish. But would it make sense that there has to be an error in something that the statute requires that the county do? That's not what 310-A-6 says. It says any county error. And the fact of the matter is, this is... But doesn't that refer to what the statute requires? I can re-look at the literal language of the statute, Justice, but I don't believe it does refer to a publication that they are required to make under the statute. These property characteristic websites are based on the records that the county keeps in their offices, these property characteristic cards. So it is information that the county compiles and publishes as part of the scavenger sale. I mean, that's how they notify the public and tax buyers of the properties that are up for the scavenger sale. So whether the statute requires them to do that or not, that's what they do do to inform the public of the properties that are up for sale. And that's what tax buyers do utilize. The fact that it says you should not utilize the property location for any purpose. Excuse me. However, you may update the property location with your legal post and mailing address should you choose to do so. That is something that the respondent has argued. That's a pretty good argument. What do you say? I don't think so, because the state statute can't be circumvented by the county itself saying, well, you know, even if this may be an error, we're going to define it as not an error. They can't circumvent state law with their own disclaimer. They're publishing information about property. And, again, I think in terms of the statutory construction of the language of 310A5, it says any county error. And for the county to say, well, you know, if we disclaim that this is accurate, then it's not an error to which the state statute is applicable. And I think there's a clear separation of powers problem with an executive department circumventing a state law by their own disclaimers or definition of what is or what is not an error. So I really don't think that argument is persuasive here. Thank you. And I think a related point to that is that, as we've cited, there's case law saying that one of the purposes of the sale and error statute is to encourage tax buyers. I mean, without tax buyers, the scavenger sale doesn't happen. The county doesn't recoup any delinquent tax money. And this county error provision is a protection for tax buyers. They're not assured of any return on their investment. So they're taking a risk. And we have cited case law to the effect that, yes, one of the purposes of this statute is we want to encourage tax buyers of this. And the interpretation of the statute that the respondent urges his court to adopt is going to inject a great deal of uncertainty into what is a sufficient error under the county error provision, A-5. Did the quote error force the buyers to get property that they weren't trying to get? Was it a different shopping center? Was it a smaller shopping center? I don't ‑‑ frankly, to be perfectly honest, I came in on this on the motion to reconsider, and that issue had not been made part of the record as it was prior counsel's position, and it's our position before this court, that any kind of reliance by ‑‑ They certainly didn't get something on a different street because there isn't another dog. That is correct. And I acknowledge that the difference, the mistake here, the error here is, you know, what could be and what the respondent in the argument below acknowledged was a mere scrivener's error. But, again, when you start reading into the statute a materiality term, a materiality requirement, it's going to foment litigation as to what kind of error is material enough. That strikes me as a rather hyper‑technical argument. I mean, the difference between road and avenue, whether you're still talking the same property. The picture was correct. I agree with all of that. The pin was correct. I agree with all of that. He bid on his property based on the pin, and he got the property with that pin, 2901423015000. That's what he bid on. That's what he got. I agree with all of that. So that's what he bid on. Well, what I would say. And his excuse is, well, I didn't have time to go actually look at the property. I just looked at the picture. Yes. He's spending $1.4 million on property he can't drive out to look at. That is, in fact, the case. And what I want to address that point very frankly and directly, yeah, this is the type of error that could be disregarded as the respondent's urge. But I think that the court should take a broader view of this statute and not allow what could be honestly viewed as bad facts to make bad law. Because you have to not just look at this case in terms of the overall functioning of this property tax code. I mean, this is an intricate statute. It's been around for decades. It's been very successful in recouping money for the county. There's materials out there. We didn't cite them with the high degree to which properties are redeemed. And part of that is allowing taxpayers a potential out. And there's really no harm. Is it fair to say that most taxpayers do go out and look at the property to make sure that it's what they expect it to be? They often take pictures of it themselves so they know who to contact if there's a sales agent or a broker involved or an owner involved that you might not know otherwise. I mean, is that a fair statement? I don't know that it is, Justice. And based on my limited personal experience, mainly with the counsel who brought me into this case, is some of these taxpayers are buying hundreds of properties. For $1.4 million, do you think that's a very common thing? That I don't know. I would assume many of them are for much less than that. But, again, the law has to apply in a way that makes sense for all cases, not just this particular case. What about the deeds? What did the deeds say, road or avenue? There was no deed issued here, and I think that's where I'd like to distinguish the carousel case upon which respondents a lot rely. So, again, in my... There was a sale, though. There was a certificate of purchase issued to E.E. Services when they bought the...  The certificate of sale, I don't recall that. Are you arguing that it was incorrect? It's not really an issue of contention with respect to the point I was going to make about the carousel case because when a tax certificate is issued to a tax buyer, there's no change in ownership. There's no deed issued. That's kind of a preliminary step towards filing a petition for a tax deed to issue. So the reason I believe the carousel case does not apply here is that case applied to a challenge to a tax deed, saying that there's an error on the tax deed that should not have been corrected. The sale and error statute had no applicability to that case, and the court in carousel distinguished a couple cases that were sale and error cases, saying those provisions don't apply here. So the quote taken out of context from that case upon which respondents rely to argue that it has to be a substantial error really only pertains to challenges to ownership based on an error in a deed. Yeah, in those circumstances, if there's an error in a deed or somebody's saying you don't have rightful title to this property, that error has to be a substantial error in every instance. But that's not the case with respect to the sale and error provisions. Your colleague's brief says at the hearing on the application counsel for petitioner offered no witness testimony and instead relied on the documents attached to the application. Counsel, however, noted that he examined the deeds for the shopping center, and the deeds confirmed that the property is located on Dalton Road. So he looked at that stuff. He saw that in the paper. So when he saw that on the paper, he knew he was getting what he was bidding on, the PIN number, the picture, the correct address. Again, there's no requirement in the statute of reliance by the taxpayer on the error. Okay. If you could wrap up. If the Court has no further questions, I'll stand on the points made in my brief for the rest of my argument. Okay. Thank you very much. Good morning, Your Honors. May it please the Court. Good morning. The sale and error statute is intended to give taxpayers relief from the harsh effects of the doctrine of caveat emptor. It addresses situations where a taxpayer's expectations about the sale have been frustrated or defeated or they're at risk of some economic harm related to the sale. We don't have any of those circumstances in this case. The assessor calling Dalton and Avenue instead of a road did not frustrate any expectations by the taxpayer, and the taxpayer is not at risk of any economic harm as a result of the sale. The taxpayer was not misled in this case, especially when there's no evidence of a Dalton Avenue in Calumet City where the property is located. The taxpayer got the property that they thought they were bidding on at the tax sale. So the circuit court found as much in denying the petition for sale and error, and that ruling should be affirmed. The main question that's before this Court is whether an error by the assessor can be used to vacate a tax sale when that error has no connection, no relationship to the sale itself. The answer to that question is no. This conclusion is supported by reading the county error provision that's at issue in this case within the context of the entire sale and error statute. In that context, Your Honor, there's 15 other grounds for a sale and error. And for each of those, there's a clear connection between the error that's alleged and the tax sale. For example, if you have a property where the taxes were paid prior to sale, in that instance, the circuit court did not have jurisdiction to order the property to be sold, so the tax sale is void. And in other scenarios, if a property was substantially destroyed after the tax sale, the taxpayer is no longer going to get the property that they bid on. It's no longer in that same condition. In each of these types of cases, we have an error that is logically serving as a basis to vacate a tax sale. There's a rational nexus between the error and the sale itself. Now, the county error provision at issue here, it sits in the middle of all those other grounds for a sale and error. So it has to be read within that context. And from that, it's clear that the legislature intended an error by a county official to have some connection to the tax sale to justify setting the sale aside.  Sure. In fact, there's, I think, a prototypical example of it supplied in one of the cases that was offered by my colleague that where the assessor... It's a case where a property owner had applied to the assessor's office for a certificate of error. And when that happens, the assessor is supposed to timely process the application and the certificate of error forms an objection to the tax sale. It will remove a property from the tax sale. So unless the assessor performs the duties it's supposed to under the statute, you know, timely process the application, it will prevent the property from going to sale. Now, where it fails to do that, you have an error by a county official. It is not conducting the error. It's not executing the duties it's supposed to do under the property tax code. And under your analysis, that would affect the sale? Sure, because that property never should have been on the tax sale to begin with. There was a defect in the process that's related to an action by a county official. And you can have another instance where, let's say, for example, the records of a county official are inerrant so far as they list the wrong amount of taxes that are due on a property. And that is offered for sale. So it's sold for either more or less than it is actually due on the property. That can be material because it's affecting the property owner's redemption rights as to how much they'll have to pay when it comes time to redeem. Those are all material to the tax sale. Another consideration, Your Honors, is the purpose of the sale in your statute. This Court has stated in the past that the statute serves as an exception to the caveat emptor doctrine. And under Illinois law, exceptions to that doctrine involve material harms or defects. We don't let buyers unwind sales or claim damages when you have defects or errors that are immaterial. So the same should be true for the sale in error statute because it serves as an exception to the caveat emptor doctrine. An error by a county official should justify vacating the tax sale only if there is a material defect in that sale resulting from an official's conduct. The assessor calling Dalton an avenue instead of a road doesn't have any material character to it whatsoever. Allowing it to serve as a basis for a sale in error in this case subverts the purpose of the statute. And finally, Your Honors, the tax buyer proposing that the sale in error statute, the reading of it where any county error is a per se warrant vacating the tax sale, can lead to absurd results that the legislature did not intend. A tax buyer who simply does not want to pursue a deed on a property can just scour county records looking for any kind of inconsistency or error within those documents solely for the purpose of setting aside their purchase. And that appears to be what happened in this case. There's no evidence that the tax buyer knew that the assessor described Dalton as an avenue until it went looking for a reason to vacate its purchase. This is not a gotcha statute. It should not be read to reward creative efforts by a tax buyer to uncover some mistake or inconsistency in a county official's records. It's important to remember that we rely on tax sales to fund very important government services. They fund our schools. They fund public hospitals. So it's almost impossible to imagine that the legislature would treat tax sales so lightly that they could be vacated on errors by a county official that are entirely trivial and immaterial to the tax sale. The tax sale is meant, or the sale and error statute, it's meant to fix real harms. In this case, the tax buyer hasn't been able to articulate a single injury or a single harm that they've experienced as a result of the assessor mislabeling the type of street on which the property is located. The circuit court, in that sense, correctly denied the petition for sale and error, and we ask that this court affirm that decision. Unless Your Honor has any questions, I'll stand. Thanks. I'll just make a few brief points. Taking the last point that the counsel just made about how the legislature couldn't have intended for this to lightly grant sales and errors any time there's any error because of how vital this is for collecting revenues for the county. Well, I think, number one, the fact that this statute has been around for decades and has been very successful shows that the legislature knew what they were doing. It's a very intricate, interrelated statute, and I think counsel's citing all these other provisions of the statute that do enumerate materiality requirements, that do enumerate exceptions to errors or whatever, disproves their point. The legislature clearly did not do that with respect to the county error provision, 85. They made one exception to that, and that was any mistake as to the value of the property. So they clearly were contemplating one limit on that, but that was the only limit they put on that. And whether counsel thinks it's not a good practice or not to look for any error to file a petition for sale and error, it really doesn't go to the detriment of the county if they are, as he put it, lightly granted because, first of all, take this case, for example, the county has had an interest-free loan of $1.4 million plus the interest paid for the last two and a half years. And even though, yes, in this particular instance they would have to refund that money, they don't lose it necessarily because the property goes back onto the scavenger sale and they have an opportunity to sell it again. So I think in terms of the statutory scheme, the legislature has made a clear choice of allowing this to happen to encourage as many tax buyers as possible into the scavenger sale, the overall effect of which is wildly successful in recouping delinquent taxes and raising money for the county. So that in one case or another, money has to be refunded. And, yes, in this case it's a substantial amount of money. It shouldn't alter the application of the statute as written because that's going to be, as I mentioned earlier, raise uncertainty among tax buyers as to what their real risk is here. They're already taking a risk as to whether they'll get their investment back or not. And I think the legislature, based on the clear language of A5, made the decision that, yes, we're going to have this as a protection for tax buyers regardless of the materiality of the county here. If the court has no further questions, that's my final point. Okay, thanks for the arguments and the briefing on this rather esoteric area of the law. We'll take it under esoteric advisement and come back with a rather pithy opinion.